Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL OATA-2026-028[1]

| | | |
|---|---|---|
| AIRPORT SHOPPES, CORP. Y OTROS<br><br>Recurrida<br><br>v.<br><br>AEROSTAR AIRPORT HOLDINGS, LLC<br><br>Peticionaria | TA2026CE00393 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2021CV01102<br><br>Sobre: Sentencia Declaratoria; Incumplimiento de Contrato; Ley de Monopolios; Cobro de Dinero y Daños |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Martínez Cordero y la Jueza Prats Palerm.

*Martínez Cordero, jueza ponente*

### RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de abril de 2026.

Comparece Aerostar Airport Holdings, LLC (en adelante, Aerostar o parte peticionaria) mediante un recurso de *certiorari*, para solicitarnos la revisión de la *Resolución* emitida el 16 de marzo de 2026, y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Carolina.[2] Mediante la *Resolución* recurrida, el tribunal de instancia declaró *No Ha Lugar* una solicitud interpuesta por Aerostar para que se le permitiera añadir catorce (14) documentos adicionales que no fueron incluidos en el informe de conferencia con antelación a juicio.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de c*ertiorari.*

---

[1] Mediante la Orden Administrativa OATA-2026-028 del 8 de abril de 2026, debido a la inhibición del Hon. Fernando J. Bonilla Ortiz, se designó a la Hon. Annette M. Prats Palerm en su sustitución.
[2] Sistema Unificado de Manejo de Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 259.

I

De entrada, conviene mencionar que esta es la *tercera* ocasión en la cual este Tribunal de Apelaciones atiende un recurso relacionado a este caso.[3] En consideración a lo anterior, nos limitaremos a relatar los trámites procesales pertinentes a la controversia ante nos.

Establecido lo anterior, puntualizamos que el caso de marras inició cuando, el 7 de mayo de 2021, Airport Shoppes, Corp. y Airport Catering Services, Corp. (en adelante, parte recurrida) interpuso una *Demanda* contra Aerostar sobre sentencia declaratoria; incumplimiento de contrato; violación a ley de monopolios, cobro de dinero y daños.[4]

Pasado un tiempo, el 8 de abril de 2022, la parte recurrida presentó una *Demanda enmendada* con el propósito de incluir ciertos acontecimientos, ocurridos luego de la radicación de la *Demanda* original, los cuales eran relevantes a la reclamación.[5] Asimismo, incluyó una reclamación en daños por acciones de competencia desleal y represalias.

Tras varias instancias procesales innecesarias de pormenorizar, mediante *Sentencia parcial*, notificada el 26 de septiembre de 2022, el foro primario desestimó la mayoría de las causas de acción, prevaleciendo la de daños y perjuicios y la solicitud de sentencia declaratoria en cuanto al cumplimiento de la parte recurrida con sus obligaciones de pago.[6] En desacuerdo, la parte recurrida acudió a este Tribunal de Apelaciones, mediante un

---

[3] Los recursos previamente presentados son los siguientes: KLAN202200964; KLCE202300785, y TA2025CE00952. Respecto al primer y tercer recurso presentados ante este foro apelativo, reseñaremos lo sucedido en nuestro relato de los trámites procesales pertinentes. En cuanto al segundo recurso presentado ante este Tribunal, entiéndase el alfanumérico KLCE202300785, un panel hermano denegó expedir el recurso de *certiorari*. Puntualizamos que, en este recurso, Aerostar expresó su inconformidad con una *Orden*, notificada el 15 de julio de 2023, a través de la cual se autorizó la deposición de ciertas personas, conforme fue solicitado por la parte recurrida.

[4] SUMAC TPI, a la Entrada Núm. 1.

[5] *Íd.*, a la Entrada Núm. 54.

[6] *Íd.*, a la Entrada Núm. 73.

recurso de apelación.[7] Sin embargo, el referido foro confirmó el dictamen apelado.[8] Aun en desacuerdo, la parte recurrida acudió al Tribunal Supremo, quien denegó acoger el recurso de *certiorari*.[9]

Luego de varios trámites procesales los cuales incluyeron, pero no se limitaron, a la presentación de una moción de sentencia sumaria parcial por la parte recurrida,[10] la cual fue declarada sin lugar,[11] mediante *Orden* del 12 de septiembre de 2024, se ordenó a que el descubrimiento de prueba finalizara para el 31 de diciembre de 2024.[12]

Así las cosas, el 30 de enero de 2025, se presentó una segunda solicitud de sentencia sumaria por insuficiencia de prueba, esta vez por parte de Aerostar.[13] Presentada la oposición de la parte recurrida,[14] el tribunal *a quo* dio el asunto por sometido para su disposición.[15]

Pasado algún tiempo, el 25 de marzo de 2025, se celebró una vista de seguimiento.[16] Durante la misma, el foro de instancia señaló la vista sobre conferencia con antelación a juicio para el 3 de septiembre de 2025. Cónsono a lo anterior, ordenó que el informe de conferencia con antelación a juicio se presentara con diez (10) días de anticipación a la misma, y que la prueba se cargara al Sistema Unificado de Manejo y Administración de Casos (SUMAC).[17]

Subsiguientemente, el 25 de agosto de 2025, las partes presentaron el *Informe preliminar entre abogados y abogadas*.[18] Por otro lado, el 27 de agosto de 2025, la parte recurrida instó un escrito

---

[7] SUMAC TPI, a la Entrada Núm. 80.
[8] Véase *Sentencia* del alfanumérico KLAN202200964.
[9] Véase *Resolución* del alfanumérico CC-2023-0315.
[10] SUMAC TPI, a la Entrada Núm. 154.
[11] *Íd.*, a la Entrada Núm. 182.
[12] *Íd.*, a la Entrada Núm. 177.
[13] *Íd.*, a la Entrada Núm. 189.
[14] *Íd.*, a la Entrada Núm. 197.
[15] *Íd.*, a la Entrada Núm. 198.
[16] *Íd.*, a la Entrada Núm. 202.
[17] *Íd.*, a la Entrada Núm. 202.
[18] *Íd.*, a la Entrada Núm. 207.

solicitando término para cargar la prueba al SUMAC dado a dificultades técnicas,[19] lo cual el foro de instancia concedió.[20]

Al día siguiente, el 28 de agosto de 2025, la parte recurrida presentó una *Moción en cumplimiento de orden.*[21] En esa misma fecha, también, presentó otra *Moción en cumplimiento de orden.*[22] La finalidad de dichos escritos fue para presentar la prueba estipulada, así como las identificaciones de la parte recurrida. Por otro lado, en esa misma fecha, Aerostar presentó una *Moción en cumplimiento de orden sometiendo prueba documental para el juicio.*[23]

Posteriormente, el 29 de agosto de 2025, la parte recurrida presentó una solicitud de transferencia de la vista de conferencia con antelación a juicio, para lo cual Aerostar no tuvo objeción.[24] Mediante *Orden*, emitida el 1 de septiembre de 2025 y notificada al día siguiente, el tribunal *a quo* reseñaló la vista de conferencia con antelación a juicio para el 22 de septiembre de 2025.[25]

Llegado el día de la vista,[26] el tribunal de instancia dispuso que, señalaría una vista transaccional donde se atenderían las objeciones a la prueba. Se ordenó, además, a presentar la prueba documental en carpeta. La vista transaccional quedó señalada para el 24 de noviembre de 2025.

Luego, el 29 de octubre de 2025, el foro *a quo* emitió y notificó una *Resolución* mediante la cual declaró *No Ha Lugar* la segunda solicitud de sentencia sumaria por insuficiencia de prueba interpuesta por Aerostar, y ordenó la continuación de los procedimientos.[27]

---

[19] SUMAC TPI, a la Entrada Núm. 209.
[20] *Íd.*, a la Entrada Núm. 212.
[21] *Íd.*, a la Entrada Núm. 213. La parte recurrida cargó al SUMAC TPI un total de ochenta y cuatro (84) piezas de evidencia.
[22] *Íd.,* a la Entrada Núm. 214. La parte recurrida cargó al SUMAC TPI un total de ocho (8) piezas de identificación.
[23] *Íd.,* a la Entrada 215. AEROSTAR cargó dos (2) piezas de identificación.
[24] *Íd.,* a la Entrada Núm. 216.
[25] *Íd.,* a la Entrada Núm. 220.
[26] *Íd.,* a la Entrada Núm. 227.
[27] *Íd.,* a la Entrada Núm. 224.

Así las cosas, el 24 de noviembre de 2025, se celebró vista transaccional.[28] En la vista, además de realizar un ejercicio con la finalidad de que las partes alcanzaran un acuerdo, cosa que no ocurrió, en lo atinente, el foro de instancia pautó la celebración del juicio en su fondo para los días 14, 15, 20 y 23 de abril de 2026; dispuso que faltaba completar la discusión del informe de conferencia con antelación a juicio, para lo cual señaló vista para el 4 de febrero de 2026.

Luego de varios trámites innecesarios pormenorizar, el 24 de diciembre de 2025, Aerostar compareció ante esta Curia mediante un recurso de *certiorari* para que se revocara lo actuado por el tribunal de instancia cuando denegó la solicitud de sentencia sumaria por insuficiencia de prueba.[29] La expedición del auto de *certiorari* fue denegada mediante *Resolución*, emitida el 29 de enero de 2026 y notificada al día siguiente.[30]

Tres (3) meses después de haberse denegado la solicitud de sentencia sumaria, y un (1) año y medio después de haberse presentado el informe de conferencia con antelación a juicio, entiéndase, el 30 de enero de 2026, Aerostar instó una *Moción suplementando informe preliminar entre abogados y abogadas sobre conferencia con antelación al juicio (ENT 207)*.[31] Adujo que, dado a que al presentarse el informe preliminar entre abogados aún estaba pendiente la adjudicación de su solicitud de sentencia sumaria, se reservó el derecho de enmendar el aludido informe, sujeto a la determinación del foro primario. Así, pues, solicitó, en vista de que el Tribunal había declarado sin lugar su moción de sentencia sumaria, se le permitiera suplementar los documentos que podrían ser utilizados durante el juicio. Acompañó catorce (14) documentos

---

[28] SUMAC TPI, a la Entrada Núm. 248.
[29] *Íd.,* a la Entrada Núm. 247. El recurso de *certiorari* fue presentado en el alfanumérico TA2025CE00952.
[30] *Íd.,* a la Entrada Núm. 251.
[31] *Íd.,* a la Entrada Núm. 249.

adicionales. Ese mismo día, Aerostar presentó una segunda moción suplementando el informe preliminar de abogados, en la cual adjuntó los referidos (14) catorce documentos.[32]

En respuesta, mediante dos (2) *Órdenes* emitidas y notificadas el 2 de febrero de 2026, el tribunal de instancia ordenó que los escritos cargados en el SUMAC TPI a las Entradas 249 y 250 fuesen unidos al expediente.[33]

Días más tarde, el 4 de febrero de 2026, se celebró una vista.[34] Durante la misma, en lo atinente, se detalló la prueba documental estipulada y de cada una de las partes. Además, se discutió en torno a la solicitud de Aerostar para incluir como identificaciones los documentos en controversia. A tenor, el foro de instancia concedió término a la parte recurrida para expresarse.

Por su parte, el 24 de febrero de 2026, la parte recurrida presentó su *Oposición a: Moción suplementando informe preliminar entre abogados y abogadas **(ENT. 249)** y Moción suplementando [...] y para restringir ciertos documentos como confidencial **(ENT. 250)**.*[35] Esbozó, en síntesis, que la solicitud interpuesta por Aerostar era extemporánea, con la finalidad de que se le permitiera añadir ciertos documentos fuera del periodo correspondiente a la presentación del informe de conferencia con antelación a juicio. Puntualizó que el informe había sido presentado desde el 25 de agosto de 2025. Señaló que Aerostar conocía toda la prueba disponible desde el cierre del descubrimiento de prueba y que el informe presentado debió haber estado completo. Acotó que las razones ofrecidas por Aerostar no justificaban, bajo ninguna circunstancia, la concesión del remedio solicitado y que debía procederse al juicio, sin más dilación. Dado a lo anterior, solicitó que se denegara la inclusión de

---

[32] SUMAC TPI, a la Entrada Núm. 250.
[33] *Íd.,* a las Entradas Núm. 252 y 253.
[34] *Íd.,* a la Entrada Núm. 264.
[35] *Íd.*, a la Entrada Núm. 255.

lo peticionado y se ordenara su desglose del expediente judicial. Por su parte, el 12 de marzo de 2026, Aerostar presentó su réplica a los escritos interpuestos por la parte recurrida.[36] Argumentó en esencia que sus solicitudes no eran tardías puesto a que se estaban presentando tres (3) meses antes del juicio y que los documentos fueron intercambiados en el descubrimiento de prueba. Esbozó que era necesario suplementar el informe dado a la denegatoria de la solicitud de sentencia sumaria. Solicitó que se concediera el remedio solicitado, aduciendo que no existía perjuicio alguno ni violación al trámite procesal.

En respuesta, el 16 de marzo de 2026, notificada al día siguiente, el foro *a quo* emitió la *Resolución* recurrida.[37] Mediante la misma, declaró *No Ha Lugar* la solicitud presentada por Aerostar para que se le permitiera incluir catorce (14) documentos adicionales que no fueron incluidos en el informe de conferencia con antelación a juicio. En el dictamen recurrido, el tribunal de instancia concluyó que Aerostar no demostró justa causa para suplementar su prueba documental, la cual no fue incluida en el informe de conferencia con antelación a juicio y que su solicitud fue una tardía, sin fundamento específico.

En desacuerdo, el 31 de marzo de 2026, compareció Aerostar mediante un recurso de certiorari en el cual esbozó la comisión de los siguientes dos (2) señalamientos de error:

    A. ERRÓ EL TPI AL NO PERMITIR LA ENMIENDA DE AEROSTAR A SU PARTE DEL INFORME DE CONFERENCIA CON ANTELACIÓN AL JUICIO *ANTES* DE LA CELEBRACIÓN DE LA VISTA FINAL SOBRE TAL CONFERENCIA, EN AUSENCIA TOTAL DE PERJUICIO ALGUNO A LA PARTE RECURRIDA, Y HABIÉNDOSE SOLICITADO CON SUFICIENTE ANTELACIÓN AL JUICIO.

    B. ERRÓ EL TPI AL NO PERMITIR LA ENMIENDA DE AEROSTAR A SU PARTE DEL INFORME DE CONFERENCIA CON ANTELACIÓN AL JUICIO POR NO HABERSE DEMOSTRADO JUSTA CAUSA BAJO LA

---

[36] SUMAC TPI, a la Entrada Núm. 257.
[37] *Íd.*, a la Entrada Núm. 259.

REGLA 37.4 DE PROCEDIMIENTO CIVIL, TODA VEZ QUE LA JUSTA CAUSA QUE EXIGE DICHA REGLA 37.4 ES PARA PRESENTAR *EN EL JUICIO* PRUEBA NO IDENTIFICADA EN EL INFORME Y NO PARA ENMENDAR EL MISMO PREVIO AL JUICIO.

En la misma fecha en que se presentó el recurso, AEROSTAR también interpuso una *Moción en auxilio de jurisdicción.* Por su parte, el 1 de abril de 2026, la parte recurrida presentó *Oposición a Moción en auxilio de jurisdicción.*

Mediante *Resolución* emitida el 1 de abril de 2026, este Tribunal declaró *Ha Lugar* la solicitud sobre paralización de los procedimientos ante el foro de instancia y concedió a la parte recurrida hasta el 8 de abril de 2026 a las 12:00 del mediodía para presentar su posición en torno al recurso.

El 7 de abril de 2026, compareció la parte recurrida mediante *Memorando en oposición a la expedición del auto de certiorari.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

**A. Expedición del recurso de *Certiorari***

Los recursos de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[38] Esta Regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo, mediante el recurso de *certiorari,* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o

---

[38] 32 LPRA Ap. V, R. 52.1.

en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[39]

[…].[40]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *certiorari* que:

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*

[…].[41]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[42] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[43] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[44] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[45]

De otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar ciertos criterios para expedir un auto de *certiorari.* Estos son:

---

[39] 32 LPRA Ap. V, R. 52.1.
[40] *Íd.*
[41] 32 LPRA Ap. V, R. 52.2(b).
[42] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[43] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[44] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[45] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [46]

Por otro lado, el Tribunal Supremo de Puerto Rico ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[47] Igualmente, al evaluar la procedencia del referido auto, debemos tener presente que el foro primario tiene amplia discreción para manejar los casos ante su consideración.[48] De manera que los Tribunales Apelativos no debemos pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial.[49] Ello, puesto que el foro primario es el que mejor conoce las particularidades de los asuntos ante su consideración.[50]

Por último, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos.[51] Meramente, responde a la facultad discrecional del

---

[46] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).
[47] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[48] *BPPR v. SLG Gómez-López*, 213 DPR 314, 334 (2023).
[49] *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012).
[50] *Íd.*
[51] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[52]

### III

En el presente caso, la parte peticionaria nos presenta su inconformidad con una *Resolución* del tribunal de instancia mediante la cual declaró *No Ha Lugar* su solicitud para que se le permitiera enmendar el informe de conferencia con antelación al juicio para incluir catorce (14) documentos adicionales que no fueron incluidos originalmente.

Según expusimos en nuestra exposición doctrinal previa, el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[53] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[54]

Tras evaluar minuciosamente el recurso presentado por la parte peticionaria, y luego de una revisión de la totalidad del expediente ante nos, es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *certiorari* al amparo de Regla 52.1 de Procedimiento Civil,[55] ni tampoco en virtud de la Regla 40 del Reglamento del Tribunal de Apelaciones.[56] Los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por otro lado, entendemos

---

[52] *Torres Martínez v. Torres Ghigliotty*, supra, a la pág. 96.
[53] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[54] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[55] 32 LPRA Ap. V, R. 52.1.
[56] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.

que el dictamen recurrido no es patentemente erróneo, y que encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que la peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Menos aun cuando coincidimos en que no existen elementos que justifiquen nuestra intervención con el manejo del caso, según determinado por el foro primario en este caso. Conforme expresamos previamente, esta Curia no debe pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial, puesto que esta es la que mejor conoce las particularidades de los asuntos ante su consideración.[57]

Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de c*ertiorari* y, en consecuencia, se deja sin efecto la paralización de los procedimientos ante el foro de instancia por lo que se ordena la continuación de los procedimientos sin la necesidad de aguardar por el mandato.[58]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[57] *Mejías v. Carrasquillo*, supra, a las págs. 306-307.

[58] Al amparo de la Regla 35 (A) (1) de nuestro Reglamento, la primera instancia judicial puede proceder con lo aquí resuelto sin que tenga esperar por el mandato. Véase *In re Aprob. Enmdas. Reglamento TA*, supra, a la pág. 55.